IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATALIE COOK and MICHAEL A. PEREZ, individually and for all others similarly situated, | ) ) ) Case No. 1:15-cv-07718 |
| Plaintiffs, | ) ) ) |
| v. | ) Honorable Judge Sharon Johnson ) Coleman ) |
| BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION, | ) Magistrate Judge Jeffrey T. ) Gilbert ) |
| Defendants. | ) ) ) |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS
AND COLLECTIVE ACTION SETTLEMENT**

**I.     INTRODUCTION**

Plaintiffs, Natalie Cook and Michael A. Perez ("Named Plaintiffs"), submit this Memorandum in support of their Joint Motion for Preliminary Approval of Class and Collective Action Settlement. As detailed below, the Court should preliminarily approve the Settlement because it is fair, reasonable, and adequate under the governing legal standards and provides reasonable monetary compensation to the Plaintiff Class Members. As such, Named Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the proposed Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached hereto as Exhibit 1, and plan of settlement administration therein; (2) approve the proposed Illinois Rule 23 Class Notice, the proposed FLSA Collective Notice (collectively "Class Notice"), the Illinois Claim Form, and the FLSA Consent Form (collectively "Claim Form"), attached to the Settlement Agreement as Exhibits A, B, C and D; (3) authorize mailing of the Class Notice in a manner consistent with the Settlement Agreement; (4) schedule a final approval hearing; and (5) enter

1

the [Proposed] Order Granting Preliminary Approval of Class and Collective Action Settlement, attached hereto as Exhibit 2.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 1, 2015, Named Plaintiffs filed the above-captioned class and collective action with this Court against Bank of America, N.A. and Bank of America Corporation ("Defendants" or "BANA") alleging that they and other Treasury Services Senior Advisors and/or Treasury Services Advisors (hereinafter "TSAs"), who worked as customer service representatives for Defendants' corporate clients, were misclassified as exempt from the overtime requirements of both federal and state law and were not compensated at a rate of time and one-half for hours worked over forty per week, in violation of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. (Dkt. 1). Plaintiffs alleged that because their primary job duty was customer service under the supervision of a manager, without the authority to do anything other than field service requests from Defendants' clients via e-mail and telephone, they and other TSAs were not employed in a bona fide administrative or professional capacity and therefore fell outside of the FLSA's exempt duty category.[1] As a result, Plaintiffs allege they and other TSAs were deprived of overtime wages in violation of federal and state law.

Defendants filed a Motion to Dismiss for failure to state a claim for relief, which was subsequently stricken without prejudice, and leave was granted for Plaintiffs to amend. On October 20, 2015, Plaintiffs filed their Amended Collective Action Complaint alleging overtime violations under the FLSA and the IMWL. (Dkt. 14). In response, Defendants again moved to have the case dismissed or alternatively, transferred to the Central District of California under

---

[1] The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g.*, *Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

2

the "first-to-file" rule, premised upon another overtime class action containing similar allegations, *Williams v. Bank of America, N.A., et al.*, filed a few weeks earlier on behalf of a putative class of "Dedicated Service Directors" who worked out of Defendants' Brea, California office.[2] Because the members of the proposed collective group in California were already the subject of litigation in California, Plaintiffs agreed to exclude them from this lawsuit. The Court denied the motion and Defendants subsequently filed an answer, denying Plaintiffs' allegations and asserting affirmative defenses. (Dkt. 18). Shortly thereafter, Plaintiffs and Defendants (the "Parties") agreed to exchange discovery for settlement purposes and mediate Plaintiffs' claims on a class- and collective-wide basis.

## III. SETTLEMENT NEGOTIATIONS

After agreeing to mediation, Defendants also agreed to toll the statute of limitations for all putative class members and provided data for approximately 769 employees who held the job title of 'Treasury Services Consultant' (corresponding to the Bank's internal job code CI049) and 'Treasury Services Senior Advisor' (job code CI053) and who were classified as exempt from the overtime requirements of the FLSA. The data provided records reflecting the total actual workweeks (61,776) and the weekly pay for each putative class member for the time period from September 1, 2012 through January 4, 2016.

After exchanging mediation briefs, the Parties participated in an all-day mediation session overseen by experienced wage and hour mediator, David A. Rotman, Esq. *See* Exhibit 3 – Declaration of Ryan Stephan at ¶ 8. The Parties did not settle their claims at that time. *Id*. Shortly thereafter, Mr. Rotman made a Mediator's Proposal. On February 8, 2016, the Parties

---

[2] In different locations throughout the country, such as in California, the term "Dedicated Service Director" is used to describe the same role that Plaintiffs held in Illinois. The official job title of the position that the *Williams* plaintiff held, and that the Named Plaintiffs herein held, is "Treasury Services Senior Advisor." *See* Dkt. 16-5 at ¶ 5.

accepted Mr. Rotman's Mediator's Proposal. Over the course of the subsequent two months, the Parties have negotiated the remaining terms of the settlement, which have been memorialized in the Settlement Agreement. *See* Ex. 1. This Settlement includes the Named Plaintiffs, Illinois Rule 23 Class Members, and FLSA Opt-In Collective Class Members, exclusive of California, defined as all current and former Treasury Services Senior Advisors and Treasury Services Advisors employed by Defendants from September 14, 2012 through and including the date the Court enters an Order preliminarily approving this Settlement. *Id*. at ¶¶ 5, 6.

Defendants have denied and continue to deny any liability, wrongdoing, or violation of any law whatsoever associated with any of the facts or claims alleged in this lawsuit and make no concession or admission of wrongdoing or liability of any kind. Nonetheless, the Parties have agreed to settle the claims asserted in this Lawsuit for the significant monetary relief of Three Million, Two Hundred and Fifty Thousand Dollars ($3,250,000.00) based on the terms and conditions set forth in the Settlement Agreement and subject to this Court's approval.

**IV.     SUMMARY OF THE SETTLEMENT TERMS**

    **A.     The Settlement Amount**

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement in the maximum Gross Settlement Amount of Three Million, Two Hundred and Fifty Thousand Dollars ($3,250,000.00). *See* Settlement Agreement at ¶ 21. The Gross Settlement amount covers: (1) all amounts to be paid to Named Plaintiffs, Illinois Rule 23 Class Members and FLSA Class Members who submit valid and timely Claim Forms; (2) all court-approved attorneys' fees and reasonable costs; (3) all approved enhancement payments to the Named Plaintiffs; and (4) all costs associated with administering the settlement. *Id*.

The net settlement amount (*i.e.*, the amount of the settlement available to be paid out to class members after deducting enhancement payments, attorneys' fees and costs and administration expenses) is estimated at approximately $2,110,500. Because there are approximately 62,000 total work weeks, and presuming a 100% claims rate, the estimated weekly payout is $34 per week. Additionally, Defendants have agreed to redistribute 50% of all unclaimed funds allocated to the Rule 23 Class on a pro rata basis to the Rule 23 Class Members who have timely submitted Claim Forms by the Claim Deadline. *Id.* at ¶ 50.

### B. Eligible Class Members

As set forth in the Settlement Agreement, the Parties have negotiated a proposed Settlement that, if approved, will provide substantial benefits to the following two groups of individuals:

   i.   All current and former Treasury Services Senior Advisors and Treasury Services Advisors employed by Defendants nationwide (excluding California) from September 14, 2012 through and including the date the Court enters an Order preliminarily approving the terms and conditions of the Settlement Agreement ("**FLSA Class Members**"). *Id.* at ¶ 5.

   ii.  All current and former Treasury Services Senior Advisors and Treasury Services Advisors employed by Defendants in the State of Illinois from September 14, 2012 through and including the date the Court enters an Order preliminarily approving the terms and conditions of the Settlement Agreement ("**Rule 23 Class Members**"). *Id.* at ¶ 6.

The FLSA Class Members and Rule 23 Class Members may hereinafter be referred to collectively as "Plaintiff Class Members."

### C. Claims Administrator and Notice

After obtaining bids from several different potential claims administrators, the Parties have agreed to retain Rust Consulting, who provided the lowest bid, as the Claims Administrator. Settlement Agreement ¶ 41. The Claims Administrator's fees for administration and distribution

5

of the settlement award will be paid from the Gross Settlement Amount, as set forth in detail above. *Id*. at ¶¶ 21, 34. The costs in administering the settlement of this Lawsuit are estimated to be twenty-two thousand dollars ($22,000.00). *Id.* at ¶ 34.

Within ten (10) calendar days after the Court issues a Preliminary Approval Order, Defendants will provide to the Claims Administrator a database including the following information for each member of the Plaintiff Class: (1) last known address, telephone number and email address, (2) Social Security number, and (3) data pertaining to the number of weeks that each individual was actively working (*i.e.*, not on a leave of absence) in a position as part of the Plaintiff Class (the "Database"). *Id.* at ¶ 42.

Within fourteen (14) calendar days after receiving the Database, the Claims Administrator shall send the Court-Approved Collective Notice with the Claim and Consent to Join Form to all members of the FLSA Class, and the Court-Approved Class Notice with the Claim and Consent to Opt-In Form to all members of the Rule 23 Class. *Id.* at ¶ 43, 44. The Notice describes the nature of the litigation, the terms of the settlement, as well as the Class Members' options with regard to participating in the proposed settlement, objecting to the settlement, or opting out (as appropriate). *See* Exhibits A and B to Settlement Agreement. The settlement documents will be sent via first-class mail to the last-known address of each Plaintiff Class Member. Settlement Agreement ¶ 43, 44. In the event the Notice is returned undeliverable, the Claims Administrator will make prompt, reasonable efforts to obtain valid, current addresses for Plaintiff Class Members and, if an additional address is located, to send the materials to the additional address. *Id.* at ¶ 45.

Within thirteen (13) calendar days after receiving the Database, the Claims Administrator shall also create and institute a dedicated website, which will include: (a) a brief welcome page

approved by the Parties; (b) the Class Notice(s); (c) the Illinois Rule 23 Claim Form; (d) the FLSA Claim Form; (e) contact information for Class Counsel; (f) contact information for the Claims Administrator; and (g) all applicable deadlines. *Id.* at ¶ 46. Within seven (7) calendar days after the Claim Deadline, the website shall be taken down. *Id*.

To receive a Settlement Payment, all Plaintiff Class Members must complete and execute a Claim Form and submit it to the Claims Administrator. *Id.* at ¶ 49, 50. To be deemed timely, a Claim Form or objection must be received by the Claims Administrator no later than sixty (60) calendar days from mailing of the Notice. *Id*.

### D.    **Payments to Plaintiff Class Members**

The computation of the payments to Plaintiff Class Members will be based upon the total number of workweeks he or she was actively employed (*i.e.*, not on a leave of absence) in a relevant position during the relevant time period ("eligible workweeks"). *See* Settlement Agreement at ¶ 37. As set forth above, the estimated weekly payout is approximately $34.00 per week. Accordingly, if a class member worked 100 weeks for the Defendants during the applicable period, the recovery amount would be at least $3,400.00.

The net settlement amount (less attorneys' fees, enhancement payments and settlement administration costs) will first be divided pro rata between the FLSA Class and the Rule 23 Class based upon approximately 62,000 total active workweeks. *Id*. To determine the total distribution amount for the FLSA Class, the total workweeks attributable to the FLSA Class Members (approximately 78% of total weeks) will be divided by the total workweeks of all Plaintiff Class Members, and then multiplied by the net settlement amount. *Id*. Similarly, the total amount to be distributed to the Rule 23 Class Members (approximately 22%) will be determined by dividing

the total workweeks attributable to the Rule 23 Class Members by the total workweeks of all Plaintiff Class members, and then multiplied by the net settlement amount. *Id*.

Second, the Individual Settlement Shares for Plaintiff Class Members will be determined based on his or her eligible workweeks attributable to the relevant Class distribution amount. *Id.* at ¶ 37. To determine each individual FLSA Class Member's settlement payment, the total distribution amount for the FLSA Class will be divided by the total number of eligible workweeks for all FLSA Class Members, and then multiplied by his or her eligible workweeks. *Id*. Similarly, to determine each Rule 23 Class Member's settlement payment, the total distribution amount for the Rule 23 Class will be divided by the total number of eligible workweeks for all Rule 23 Class Members, and then multiplied by his or her eligible workweeks. *Id*.

Within fifteen (15) calendar days after the Effective Date, Defendants shall provide the necessary funds to the Claims Administrator to be dispersed into a "Qualified Settlement Fund." *Id.* at ¶ 60. Within ten (10) calendar days after Defendants transmit the funds to the Qualified Settlement Fund, the Claims administrator will disburse the settlement checks to the participating Plaintiff Class Members and will disburse any court-approved attorneys' fees and costs to Class Counsel, any Claims Administration charges, and any court-approved enhancement payments to Named Plaintiffs. *Id.* at ¶ 61.

### E. Enhancement Payments to Named Plaintiffs

In exchange for their beneficial efforts on behalf of the Settlement Class, Plaintiffs will apply for Court approval, and Defendants will not oppose, an enhancement payment in an amount not to exceed Fifteen Thousand Dollars ($15,000.00) per Named Plaintiff, or Thirty Thousand Dollars ($30,000.00) total. *See* Settlement Agreement at ¶ 36.

8

### F. Attorneys' Fees and Litigation Costs

No later than fourteen (14) days before the Final Approval Hearing, Class Counsel will petition for Court approval of, and Defendants will not oppose, an award of attorneys' fees in the amount of up to thirty three percent (33%) of the Gross Settlement Amount, or One Million, Seventy Two Thousand and Five Hundred Dollars ($1,072,500.00), and an additional amount as reimbursement for their actual litigation costs.[3] *See* Settlement Agreement at ¶ 35. The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the work performed by Class Counsel, the risks undertaken, and the results achieved. Notwithstanding the above, any reduction in Class Counsel's request for fees and costs shall revert to the Net Settlement payable to Participating Class Members. *Id.*

### G. Dismissal With Prejudice and Release of Claims

As set forth in greater detail in paragraphs 65 and 66 of the Settlement Agreement, in exchange for these significant benefits, all Rule 23 Class Members who do not timely opt-out of the settlement will fully release and discharge Defendants from all federal and state claims relating to the subject matter of the litigation, and all FLSA Class Members who timely opt into the settlement will fully release and discharge Defendants from all federal claims relating to the subject matter of the litigation, as well as respective governing state law claims for the applicable time period. *See* Settlement Agreement at ¶ 65, 66. Putative FLSA Class Members who do not submit opt-in claim forms will not release any claims against Defendants.

---

[3] There are two ways to compensate attorneys for the successful prosecution of statutory claims—the lodestar method and the percentage of the fund method. The trend in this Circuit is to use the percentage of the fund method in common fund cases such as this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 cv 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). To determine what percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from $33^1/_3$% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A. Applicable Legal Standard

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198-99); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual for Complex Litigation (3d ed.) § 30.41, at 236 (1995). At the preliminary approval stage, the Court's task is merely to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is

10

fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Cook v. McCarron*, 92 C 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) (citing *Armstrong*, 616 F.2d at 314).

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . . .

Manual for Complex Litigation § 30.41 at 265 (3d ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id.*; *see also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness") (internal quotation omitted). After preliminary approval, the second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the class. *Newberg* § 11.41.

11

B.     **The Proposed Settlement is Fair, Reasonable and Adequate**

Generally, a court will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). In making these determinations, courts consider five factors: (1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997). Here, all of these factors weigh in favor of approval of the Settlement Agreement and preliminary approval.

Similarly, a court's review of an FLSA settlement includes the determination of "whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 cv 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Id.*

1.  **The Settlement Amount is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks.**

In evaluating the strength of the Plaintiffs' case on the merits, as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315. Parties to a settlement, benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted). Accordingly, when deciding whether to preliminarily approve the settlement, this Court must focus on general principles of fairness and reasonableness, rather than the substantive law governing Plaintiffs' claims. *Id*.

The outcome of this litigation is far from certain. When the Parties agreed to settle, Class Counsel generally believed that many aspects of the case were strong. However, they faced risk and uncertainty as, if the Parties had not reached a settlement, Defendants would have mounted a vigorous opposition to class and collective action certification, and on the merits of the claims. Thus, despite Named Plaintiffs' belief in the strength of their claims, there is clear risk that they would not be able to certify a class or collective action (or maintain certification in the face of motions to decertify), prevail at trial, or on any subsequent appeal. Bona fide disputes exist as to whether Named Plaintiffs and Plaintiff Class Members were misclassified by Defendants and wrongfully denied overtime compensation. Defendants have denied, and continue to deny, any

13

liability for wrongdoing or violations of the law and, in the absence of a settlement, would have fought Plaintiffs' claims at every turn, placing the possibility of any recovery in doubt. Thus, as in any complex action, the Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

The Settlement, though not providing a maximum value that conceivably might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corporation v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

14

In determining the allocation method, the Parties considered, among other things, the data provided by the Defendants totaling: (1) the number of putative class members who worked as Treasury Services Consultants (job code CI049) and Treasury Services Senior Advisors (job code CI053) and who were classified as exempt; (2) the number of actual, applicable workweeks; (3) the weekly pay for each putative class member; and (4) a reasonable estimate on the amount of overtime worked each week. The proposed Settlement thus ensures that the Plaintiff Class Members will receive significant monetary relief and those who submit claims will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

### 2. Litigation Through Trial Would Be Complex, Costly, and Long.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). Avoiding the delay and risk of protracted litigation is another reason why counsel frequently recommends, and the courts approve, settlements. *See, e.g.*, *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled. The Defendants together are one of the largest financial institutions in the world, and have retained one of the top law firms in the country to defend it in this litigation. Continuing litigation would require motion practice and the risk, time and expense associated with trial (and any subsequent appeal). These costs of further litigation are considerable, especially with regard to both time and money with uncertain results. Under these circumstances, the benefits of a guaranteed recovery today, as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of preliminary approval.

### 3. At This Preliminary Stage, There Is No Opposition to the Proposed Settlement.

Because the Parties have not yet sent the Class Notice, it is premature to fully assess this factor. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 349. However, the Named Plaintiffs support the settlement, as does Class Counsel and Defendants and their counsel. At this preliminary stage, Class Counsel is unaware of any opposition to the settlement. The Court should more fully analyze this factor after notice issues and Rule 23 Class Members are given the opportunity to object.

### 4. Competent Counsel for Both Parties Endorse this Agreement.

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Further, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200.

16

The proposed settlement is the product of arms-length, non-collusive negotiations conducted by Class Counsel, who is competent and experienced in class actions, particularly wage and hour class actions of this kind, and is intimately familiar with the strengths and weaknesses of the claims and defenses. *See* Ex. 3 at ¶ 4-6, 13. Using that experience, counsel is capable of making, and has made, well-informed judgments regarding the adequacy of the Settlement reached. *Id.* at ¶ 13. Defendants' Counsel, who is also competent and experienced in wage and hour class and collective actions like this case, also endorse this Settlement. Thus, this factor weighs in favor of preliminary approval.

### 5. At This Stage, Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

This hybrid class and collective action was resolved after approximately four months of discovery, analysis, mediation and settlement efforts. This period involved immediate and extensive settlement negotiations, including analysis of substantial data provided by Defendants, such that the stage of litigation advanced to a state in which Class Counsel could fairly and fully evaluate the nature and value of the Settlement. *See* Ex. 3 at ¶ 13. As such, this factor weighs in favor of preliminary approval.

These factors all weigh in favor of issuing preliminary approval of the Settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

### C. The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected

private mediator, David A. Rotman, Esq. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery and analysis, and only after David Rotman made a Mediator's Proposal. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

## V. **CONCLUSION**

While Plaintiffs believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the Settlement to be sent to Plaintiff Class Members and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Plaintiff Class Members of the fairness of the Settlement, the benefits to be received by Plaintiff Class Members, and Plaintiffs' Counsel's request for an award of attorneys' fees and reasonable costs. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-336 (3d ed. 2001).

For the foregoing reasons, Named Plaintiffs respectfully request that the Court:

    a. Preliminarily approve the Settlement, including conditional certification of the Plaintiff Class for settlement purposes only;

    b. Appoint Named Plaintiffs as Class Representatives;

    c. Appoint Stephan Zouras, LLP as class counsel;

    d. Appoint Rust Consulting as Claims Administrator;

e. Approve as to form and content the proposed Rule 23 Class Notice and Claim and Consent to Opt-In Form;

f. Approve as to form and content the proposed FLSA Collective Notice and Claim and Consent to Join Form;

g. Direct the mailing of Class Notice to Plaintiff Class Members; and

h. Schedule a fairness hearing on the question of whether the proposed settlement, including without limitation payment of attorneys' fees and costs and enhancement payments should be finally approved as fair, reasonable and adequate as to the Plaintiff Class Members.

Dated: April 6, 2016

Respectfully Submitted,

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
312.233.1550
312.233.1560 (fax)
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

By: */s/ Michael D. Mandel*
Michael D. Mandel, Esq.
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
310.315.8200
310.956.3113 (fax)
mmandel@mcguirewoods.com

Brian E. Spang, Esq.
MCGUIREWOODS LLP

77 West Wacker Drive, Suite 4100
Chicago, IL 60601
312.750.3532
312.698.4562 (fax)
bspang@mcguirewoods.com

**ATTORNEYS FOR DEFENDANTS**

20