IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATALIE COOK and MICHAEL A. PEREZ, individually and for all others similarly situated, | ) ) ) |
| | ) Case No. 1:15-cv-07718 |
| | ) |
| Plaintiffs, | ) |
| | ) Honorable Judge Sharon Johnson |
| v. | ) Coleman |
| | ) |
| BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION, | ) Magistrate Judge Jeffrey T. ) Gilbert |
| | ) |
| Defendants. | ) |
| | ) |

THE PARTIES' JOINT MOTION FOR FINAL APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT

**I.     INTRODUCTION**

Plaintiffs, Natalie Cook and Michael A. Perez ("Named Plaintiffs"), individually and on behalf of a certified class of individuals (collectively, "Plaintiffs"), and Defendants Bank of America, N.A. and Bank of America Corporation (collectively "Defendants") (together with Plaintiffs, the "Parties"), by and through their undersigned counsel, move for final approval of the Parties' settlement of Plaintiffs' claims of misclassification and unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*  The Parties' settlement of this FLSA collective action and IMWL Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval.  The Parties respectfully request the Court: (1) grant final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached hereto as Exhibit A; and (2) enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.

1

On April 14, 2016, the Court took the first step in the settlement approval process by preliminarily approving the Parties' Settlement Agreement; appointing Rust Consulting ("Rust" or "Claims Administrator") as Claims Administrator; directing that notice be mailed to the FLSA Collective and Rule 23 Class Members; and setting a date for the Final Approval Hearing. (D.E. 27).

Plaintiff Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation formula, and their right to participate in, object to or opt out of the settlement, as applicable. (Exhibit C – Declaration of Abigail Schwartz ("Schwartz Decl.") ¶3, 10; *see also* Schwartz Decl., Ex. 1 – Class Notice Materials). To date, four hundred and eighty-four (484) Class Members have submitted valid claim forms, zero (0) Class Members have objected to the settlement and zero (0) Class Members have opted out of the settlement. (Schwartz Decl. ¶13-15; *see also* Exhibit D – Declaration of Ryan F. Stephan ("Stephan Decl.") ¶8). With such overwhelming support for the settlement and for the reasons stated below, the Parties respectfully request that the Court grant final approval.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Parties' Joint Motion for Preliminary Approval of a Class and Collective Action Settlement (D.E. 24), Named Plaintiffs filed the above-captioned class and collective action on September 1, 2015, alleging that they and other Treasury Services Senior Advisors and/or Treasury Services Advisors (hereinafter "TSAs"), who worked as customer service representatives for Defendants' corporate clients, were misclassified as exempt from the overtime requirements of the FLSA and the IMWL and wrongfully deprived of overtime compensation. (D.E. 1).

2

Defendants filed a Motion to Dismiss for failure to state a claim for relief, which was subsequently stricken without prejudice, and leave was granted for Plaintiffs to amend. On October 20, 2015, Plaintiffs filed their Amended Collective Action Complaint alleging overtime violations under the FLSA and the IMWL. (D.E. 14). In response, Defendants again moved to have the case dismissed or, alternatively, transferred to the Central District of California under the "first-to-file" rule, premised upon another overtime class action containing similar allegations, *Williams v. Bank of America, N.A., et al.*, filed a few weeks earlier on behalf of a putative class of "Dedicated Service Directors" who worked out of Defendants' Brea, California office.[1] Because the members of the proposed collective group in California were already the subject of litigation in California, Plaintiffs agreed to exclude them from this lawsuit. The Court denied the motion and Defendants subsequently filed an answer, denying Plaintiffs' allegations and asserting affirmative defenses. (D.E. 18). Shortly thereafter, the Parties agreed to exchange discovery for settlement purposes and mediate Plaintiffs' claims on a class- and collective-wide basis.

Prior to mediation, Defendants also agreed to toll the statute of limitations for all putative class members and provided data for approximately 769 employees who held the job title of "Treasury Services Consultant" (corresponding to the Bank's internal job code CI049) and "Treasury Services Senior Advisor" (job code CI053) and who were classified as exempt from the overtime requirements of the FLSA. The data provided records reflecting the total actual workweeks (61,776) and the weekly pay for each putative class member for the time period from September 1, 2012 through January 4, 2016. Subsequently, on January 26, 2016, the

---

[1] In different locations throughout the country, such as in California, the term "Dedicated Service Director" is used to describe the same role that Plaintiffs held in Illinois. The official job title of the position that the *Williams* plaintiff held, and that the Named Plaintiffs herein held, is "Treasury Services Senior Advisor." (*See* D.E. 16-5 at ¶ 5).

3

Parties participated in an all-day mediation session overseen by experienced wage and hour mediator, David A. Rotman, Esq. Stephan Decl. at ¶7. The Parties did not settle their claims at that time. *Id*. However, Mr. Rotman submitted a Mediator's Proposal and the Parties accepted it on February 8, 2016.

Over the course of the subsequent two months, the Parties have negotiated the remaining terms of the settlement, which have been memorialized in the Settlement Agreement. *See* Ex. A. This Settlement includes the Named Plaintiffs, Illinois Rule 23 Class Members, and FLSA Opt-In Collective Class Members, exclusive of California, defined as all current and former Treasury Services Senior Advisors and Treasury Services Advisors employed by Defendants from September 14, 2012 through April 14, 2016. *Id*. at ¶¶5, 6.

Defendants have denied and continue to deny any liability, wrongdoing, or violation of any law whatsoever associated with any of the facts or claims alleged in this lawsuit and make no concession or admission of wrongdoing or liability of any kind. Nonetheless, the Parties have agreed to settle the claims asserted in this Lawsuit for the significant monetary relief of Three Million, Two Hundred and Fifty Thousand Dollars ($3,250,000.00) based on the terms and conditions set forth in the Settlement Agreement and subject to this Court's final approval.

### III.   SUMMARY OF SETTLEMENT TERMS

#### A.   The Settlement Fund

The Settlement Agreement provides that Defendants will pay a maximum Gross Settlement Amount of Three Million, Two Hundred and Fifty Thousand Dollars ($3,250,000.00). *See* Settlement Agreement at ¶21. The Gross Settlement amount covers: (1) all amounts to be paid to Named Plaintiffs, Illinois Rule 23 Class Members and FLSA Class Members who submit valid and timely Claim Forms; (2) all court-approved attorneys' fees and reasonable costs; (3) all

approved enhancement payments to the Named Plaintiffs; and (4) all costs associated with administering the settlement. *Id*. Additionally, Defendants have agreed to redistribute 50% of all unclaimed funds allocated to the Rule 23 Class on a pro rata basis to the Rule 23 Class Members who have timely submitted Claim Forms by the Claim Deadline. *Id.* at ¶ 50.

   **B.**   **Releases**

All Illinois Rule 23 Class Members who do not timely opt-out of the settlement will fully release and discharge Defendants from all federal and state claims relating to the subject matter of the litigation, and all FLSA Class Members who timely opt into the settlement will fully release and discharge Defendants from all federal claims relating to the subject matter of the litigation, as well as respective governing state law claims for the applicable time period. *See* Settlement Agreement at ¶65, 66. The releases are set forth in the Settlement Agreement as follows:

> a.   **Rule 23 Class Members:** Upon the final approval by the Court of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, all Rule 23 Class Members who have not opted out of the settlement, regardless of whether that member submitted a timely claim, fully release and discharge Defendants and Defendants' present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, registered representatives, attorneys, insurers, successors and assigns ("Releasees"), from any and all individual and class claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Lawsuit, including, but not limited to any claims under federal or state law that are alleged in the FAC, or could have been alleged based upon the facts alleged in FAC, i.e., that the Plaintiff Class Members were misclassified as exempt from overtime under Illinois law (the "Released Claims"). The Released Claims include, but are not necessarily limited to, any claim for violation of any federal, state, or local statute, rule, or regulation relating to the designation or treatment as exempt from overtime. This includes claims under Illinois state law for alleged failure to pay minimum or overtime wages and for any statutory or civil penalties under any statute, ordinance, or otherwise arising from or related to the classification as exempt from overtime. All Rule 23 Class Members who have not opted out of the settlement and who submit a timely Claim Form will, in addition to the Released Claims, fully release

5

and discharge Defendants and all Releasees from any and all claims under the FLSA for alleged failure to pay minimum or overtime wages and for any statutory or civil penalties and liquidated damages arising from or related to the classification as exempt from the FLSA.

b.  **FLSA Class Members:** Upon the final approval by the Court of this Settlement Agreement, and except as to such rights or claims as may be created by this Settlement Agreement, all FLSA Class Members who have timely opted in to the settlement will fully release and discharge Defendants and Defendants' present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, registered representatives, attorneys, insurers, successors and assigns ("Releasees"), from any and all individual and class claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Lawsuit, including, but not limited to any claims under federal or state law that are alleged in the FAC, or could have been alleged based upon the facts alleged in FAC, i.e., that the Plaintiff Class Members were misclassified as exempt from overtime (the "Released Claims"). The Released Claims include, but are not necessarily limited to, any claim for violation of any federal, state, or local statute, rule, or regulation relating to the designation or treatment as exempt from the FLSA. This includes claims under FLSA Class Members' respective governing state laws for alleged failure to pay minimum or overtime wages and for any statutory or civil penalties under any statute, ordinance, or otherwise arising from or related to the classification as exempt from overtime, exclusively for the same time period covering the FLSA Class Member's claims released under the FLSA.

c.  It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge the Released Claims. Upon entry of an order granting final approval and judgment in the Action, Class Representatives and each and every Settlement Class Member shall be bound by the terms of this Settlement Agreement and shall have recourse exclusively to the benefits, rights, and remedies provided hereunder. Class Representatives and each and every Settlement Class Member shall be deemed to have, and by operation of the judgment and final approval order entered by the Court shall have fully, finally, and forever released, relinquished, and discharged each and all of the Released Parties from any and all Released Claims through the date of entry of Judgment in the Lawsuit.

d.  Upon final approval by the Court of this Settlement Agreement, and for and in consideration of the payment of an enhancement payment to the Class Representatives for services performed on behalf of the Plaintiff Class Members, the Class Representatives, and their respective heirs, representatives, attorneys, administrators, executors, successors and assigns, fully release and discharge Releasees from any and all actions, causes of action, grievances, obligations, costs, expenses, damages, losses, claims, liabilities, suits, debts, demands, and

6

benefits (including attorneys' fees and costs actually incurred), of whatever character, in law or in equity, known or unknown, suspected or unsuspected, matured or unmatured, of any kind or nature whatsoever, based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time to the effective date of this Agreement, including but not limited to any claims or causes of action arising out of or in any way relating to the Class Representatives' employment relationship with Defendants or any Releasee.  The Class Representatives agree that this release of claims includes, but is not limited to, claims for breach of any implied or express contract or covenant; claims for promissory estoppel; claims of entitlement to any pay; claims of wrongful denial of insurance and employee benefits; claims for wrongful termination, public policy violations, defamation, invasion of privacy, emotional distress or other common law or tort matters; claims of harassment, retaliation, or discrimination under federal, state, or local law; claims based on any federal, state, or other governmental statute, regulation or ordinance, including, without limitation, the FLSA, Title VII of the Civil Rights Act, as amended, the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, the Americans with Disabilities Act, the Family and Medical Leave Act, the Illinois Human Rights Act, the IMWL, the Illinois Wage Payment and Collection Act, and the Employee Retirement Income Security Act.

e. The Parties stipulate that beyond the Gross Settlement Fund, Defendants shall not owe any further monies to the Class Representatives, Settlement Class Members, or to Class Counsel based upon the claims made and facts alleged in the Lawsuit.

f. In addition to Class Representatives' full and general release, Class Representatives agree that they will not at any time in the future, seek, apply for, or accept employment with Defendants or any of their parent companies or subsidiaries.

*Id*. at ¶¶65-70.

### C. <u>Allocation Formula</u>

The allocation to Plaintiff Class Members is based upon the total number of workweeks he or she was actively employed (*i.e.*, not on a leave of absence) in a relevant position during the relevant time period ("eligible workweeks"). *See* Settlement Agreement at ¶37. First, the net settlement amount (less attorneys' fees, enhancement payments and settlement administration costs) is divided pro rata between the FLSA Class and the Rule 23 Class based upon approximately 62,000 total active workweeks. *Id*.

In determining the total potential distribution amount for the FLSA Class, the total workweeks attributable to the FLSA Class Members (approximately 78% of total weeks) is divided by the total workweeks of all Plaintiff Class Members, and then multiplied by the net settlement amount. *Id*. Similarly, the total amount to be distributed to the Rule 23 Class Members (approximately 22%) is determined by dividing the total workweeks attributable to the Rule 23 Class Members by the total workweeks of all Plaintiff Class members, and then multiplied by the net settlement amount. *Id*.

Second, the Individual Settlement Shares for Plaintiff Class Members are determined based on his or her eligible workweeks attributable to the relevant Class distribution amount. *Id.* To determine each individual FLSA Class Member's settlement payment, the total distribution amount for the FLSA Class is divided by the total number of eligible workweeks for all FLSA Class Members, and then multiplied by his or her eligible workweeks. *Id*. Similarly, to determine each Rule 23 Class Member's settlement payment, the total distribution amount for the Rule 23 Class is divided by the total number of eligible workweeks for all Rule 23 Class Members, and then multiplied by his or her eligible workweeks. *Id*.

To date, the net settlement amount (*i.e.*, the amount of the settlement available to be paid out to class members after deducting enhancement payments, attorneys' fees and costs and administration expenses) is estimated at approximately $2,109,824.13. Based on that calculation, the average weekly payout, per Plaintiff Class Member, amounts to $49.64 per week and the average settlement award to be paid to Plaintiff Class Members is $4,377.23. Schwartz Decl. ¶¶16-17; Stephan Decl. ¶¶9-10.

8

### D. Enhancement Payments, Attorneys' Fees and Litigation Costs

In exchange for their beneficial efforts on behalf of the Settlement Class and in addition to their Settlement Payments and as approved by the Court, each Named Plaintiff will receive, and Defendants will not oppose, an enhancement payment in an amount not to exceed Fifteen Thousand Dollars ($15,000.00), or Thirty Thousand Dollars ($30,000.00) total. *See* Settlement Agreement at ¶36.

Contemporaneous with this motion, Class Counsel will petition the Court, unopposed, for approval of an award of attorneys' fees not to exceed thirty three percent (33%) of the Gross Settlement Amount, or One Million, Seventy Two Thousand and Five Hundred Dollars ($1,072,500.00), and an additional amount as reimbursement for their actual litigation costs. *See* Settlement Agreement at ¶35.

### E. Claims Administration

The Parties selected Rust Consulting, an experienced class action claims administrator, to administer the settlement. *See* Settlement Agreement ¶41. The Claims Administrator's fees for administration and distribution of the settlement award will be paid from the Gross Settlement Amount. *Id*. at ¶¶21, 34. The total cost for the administration of this Settlement, including fees incurred and future costs for completion of the administration is estimated to be $22,676. Schwartz Decl. ¶18.

On May 9, 2016, the Claims Administrator mailed the Notice of Proposed Class Action Settlement, FLSA Claim and Consent to Join Form or Illinois Rule 23 Claim and Consent to Opt-In Form (collectively "Class Notice") to 803 Plaintiff Class Members. Schwartz Decl. ¶10. After the Class Notice materials were mailed, the Claims Administrator received eight (8) Class Notices returned by USPS as undeliverable. *Id*. at ¶11. Of the eight (8) undeliverable Class

9

Notices, one (1) Class Member provided a more current address and the Class Notice was promptly re-mailed to the Class Member via First Class mail. *Id*. Of the eight (8) Class Notices returned as undeliverable, Rust performed seven (7) address traces on Class Notices returned as undeliverable for the first time. *Id*. Of the seven (7) traces performed, five (5) more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First Class mail; Rust did not obtain updated addresses for two (2) undeliverable Class Notices. *Id*. Additionally, one (1) Class Notice was returned by the Post Office with a forwarding address attached. Rust promptly re-mailed Class Notice to this Class Member via First Class mail. *Id*. at ¶12.

  **F.**  **Claims, Objections and Opt-Outs**

The deadline to submit a Claim and Consent to Join Form, object to and/or opt out of the settlement was July 8, 2016. This deadline has now passed. To date, a total of 484 Claim Forms have been submitted, no Class Member has requested exclusion from the settlement and no Class Member has objected to the settlement, representing a claims rate of over 60% of the total 803 Plaintiff Class Members. Schwartz Decl. ¶13-15.

**IV.** **THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF FED. RULE CIV. P. 23**

Rule 23(c)(2)(B) requires the Court to direct to Plaintiff Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id*. Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175. As set forth in Section III.E above, the Parties' and the Settlement

10

Administrator's efforts to effectuate notice by mail to the Class Members meet the requirements of Rule 23(c)(2)(B).

## V. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' FLSA AND IMWL CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* Alba Conte, Herbert B. Newberg, *Newberg on Class Action* § 11.41 (4th ed.) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of the FLSA and IMWL and thus should be approved.

### A. The Settlement Is Fair, Reasonable, and Adequate

To approve a proposed settlement of a class action under Rule 23, a district court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). The court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). All of these factors weigh in favor of final approval.

#### 1. The Settlement Amount is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

This settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

12

Defendants have agreed to settle this case for a Gross Settlement Amount of $3,250,000.00. *See* Settlement Agreement ¶21. The Gross Settlement Amount shall fully resolve and satisfy: all amounts to be paid to Named Plaintiffs, Illinois Rule 23 Class Members and FLSA Class Members who submit valid and timely Claim Forms; (2) all court-approved attorneys' fees and reasonable costs; (3) all approved enhancement payments to the Named Plaintiffs; and (4) all costs associated with administering the settlement. *Id*. Additionally, Defendants have agreed to redistribute 50% of all unclaimed funds allocated to the Rule 23 Class on a pro rata basis to the Rule 23 Class Members who have timely submitted Claim Forms by the Claim Deadline. *Id.* at ¶50. As previously set forth, the average weekly payout amounts to $49.64 per Plaintiff Class Member and the average settlement award to be paid to Class Members is $4,377.23. This is a substantial settlement that represents a significant value, particularly given the attendant risks of litigating the merits of the case.

In evaluating the strength of a plaintiff's case on the merits balanced against the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Because "[t]he essence of settlement is compromise," *Hiram Walker*, 768 F.2d at 889, courts should not reject a settlement "solely because it does not provide a complete victory to the Plaintiff." *Isby*, 75 F.3d at 1200; *see also Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and

receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. When the Parties agreed to settle, Class Counsel generally believed that many aspects of the case were strong. However, they faced risk and uncertainty as, if the Parties had not reached a settlement, Defendants would have mounted a vigorous opposition to class and collective action certification, and on the merits of the claims. Thus, despite Named Plaintiffs' belief in the strength of their claims, there is clear risk that they would not be able to certify a class or collective action (or maintain certification in the face of motions to decertify), prevail at trial, or on any subsequent appeal. Bona fide disputes exist as to whether Named Plaintiffs and Plaintiff Class Members were misclassified by Defendants and wrongfully denied overtime compensation. Defendants have denied, and continue to deny, any liability for wrongdoing or violations of the law and, in the absence of a settlement, would have fought Plaintiffs' claims at every turn, placing the possibility of any recovery in doubt. Thus, as in any complex action, the Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

The proposed settlement thus ensures that the Plaintiff Class Members who submitted valid claims will receive a settlement amount that is reasonable. In light of the substantial recovery this settlement provides, and the attendant risks of litigation, this factor therefore weighs in favor of final approval.

14

### 2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money for the class; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The Defendants together are one of the largest financial institutions in the world, and have retained one of the top law firms in the country to defend it in this litigation. Continuing litigation would require motion practice and the risk, time and expense associated with trial (and any subsequent appeal). These costs of further litigation are considerable, especially with regard to both time and money with uncertain results. Under these circumstances, the benefits of a guaranteed recovery today, as opposed to an uncertain result in the future, are readily apparent and the proposed settlement provides immediate benefits. This factor therefore weighs in favor of final approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same). Here, and as set forth above, out of the 803 individuals who received the Notice Materials, 484 submitted valid Claim Forms and no Plaintiff Class Members have requested exclusion from the settlement. Similarly, no Plaintiff Class Members have objected to the settlement. Thus, this factor also favors final approval of the settlement.

### 4. Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200, although they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Further, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. Class Counsel is competent and experienced in class actions, particularly wage and hour class actions of this kind, and is intimately familiar with the strengths and weaknesses of the claims and defenses. Stephan Decl. ¶¶3-6. Using that experience, counsel is capable of making, and has made, well-informed judgments regarding the adequacy of the Settlement reached. *Id.* at ¶12. Defendants' Counsel, who is also competent and experienced in wage and hour class and collective actions like this case, also endorse this Settlement. Thus, this factor weighs in favor of final approval.

16

> **5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).**

This hybrid class and collective action was resolved after approximately four months of discovery, analysis, mediation and settlement efforts. This period involved immediate and extensive settlement negotiations, including analysis of substantial data provided by Defendants, such that the stage of litigation advanced to a state in which Class Counsel could fairly and fully evaluate the nature and value of the Settlement. Stephan Decl. ¶11. As such, this factor weighs in favor of final approval.

> **B. The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion.**

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected private mediator, David A. Rotman, Esq. Stephan Decl. ¶11. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery and analysis, and only after David Rotman made a Mediator's Proposal. Therefore, this Court should find that a presumption of fairness exists to support final approval of the Settlement.

17

**CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their Motion for Final Approval of a Class Action Settlement and Approval of a FLSA Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.


Dated: July 16, 2016  Respectfully Submitted,

/s/ Ryan F. Stephan_____
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, IL 60601
312.233.1550
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

By: /s/ Michael D. Mandel_____
Michael D. Mandel, Esq.
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
310.315.8200
mmandel@mcguirewoods.com

Brian E. Spang, Esq.
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
312.750.3532
bspang@mcguirewoods.com

**ATTORNEYS FOR DEFENDANTS**